5  UNITED STATES DISTRICT COURT

6  EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7  I.V., a minor child; and APRIL OLIVARES and FERNANDO OLIVARES VARGAS, parents of I.V., | NO. 2:17-CV-0118-TOR |
| 8 | |
| 9 | ORDER GRANTING MOTION TO DISMISS 42 U.S.C. § 1983 CLAIM |
|   Plaintiffs, | |
| 10 | |
|   v. | |
| 11 | |
| 12  WENATCHEE SCHOOL DISTRICT NO. 246, *et al.*, | |
| 13   Defendants. | |

14  BEFORE THE COURT is Defendants Wenatchee School District, No. 246,

15  Taunya Brown, Jeremy Wheatley, Ronda Brender, Kelli Ottley, and Ellen

16  McIrvin's (collectively "Defendants" for the purposes of this motion) Motion to

17  Dismiss (ECF No. 20). The Motion was submitted for consideration with oral

18  argument. The Court heard oral argument from the parties on October 18, 2017.

19  For the reasons discussed below, the Motion to Dismiss (ECF No. 20) is

20  **GRANTED**.

ORDER GRANTING MOTION TO DISMISS 42 U.S.C. § 1983 CLAIM ~ 1

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint or a particular claim for "failure to state a claim upon which relief can be granted." To survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555.

When deciding, the Court may consider the plaintiff's allegations and any "documents incorporated into the complaint by reference . . . ." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *Tellabs*, 551 U.S. at 322). Plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

//

//

//

## BACKGROUND[1]

The instant action arises out of an unfortunate series of events that occurs all too often: bullying at school. Plaintiffs allege that the minor Defendant Y.A.F. subjected the minor Plaintiff I.V. to physical cruelty and public humiliation—leading to serious emotional distress, anorexia and, ultimately, severe medical complications culminating in a suicide attempt. ECF No. 26 at 6-13. Specifically, Plaintiffs allege Defendant Y.A.F. subjected Plaintiff I.V. to verbal abuse (calling I.V. "fat" and "gay boy"), threats ("if you tell anyone I will have my brothers beat you up"; threats against I.V.'s life), and physical harassment (Y.A.F. "twisted I.V.'s nipples causing severe pain") over an extended time at Orchard Middle School (OMS), which is part of the Wenatchee School District (WSD). ECF No. 26 at 6-8.

According to the Complaint, although Y.A.F. subjected I.V. to continual harassment beginning in September, 2013, I.V. did not tell his parents about the

---

[1] The background facts are gleaned from Plaintiffs' Complaint (ECF No. 26), which are to be taken as true for purposes of the Motion to Dismiss. This summary is not exhaustive, but is limited to the facts necessary for this Order.

harassment until early 2015,[2] and refused to disclose the identity of Y.A.F. until January 3, 2016. ECF No. 26 at 6-9. On January 4, 2016, the day after I.V. disclosed the identity of Y.A.F., Ms. Olivares (I.V.'s mother) met with Ms. Brown, the principal at OMS, and relayed the identity of Y.A.F. as the student bullying I.V. During the meeting, I.V. "burst into the room yelling 'Y.A.F. just threatened to kill me!'" ECF No. 26 at 9. Ms. Brown promised to take action, but the Complaint alleges that she did nothing. ECF No. 26 at 9-10.

Ms. Olivares reported the bullying to the police. ECF No. 26 at 10. The next day, police arrested Y.A.F. for harassment. ECF No. 26 at 10. Police investigation uncovered video evidence of the harassment, and Y.A.F. admitted to threatening I.V. ECF No. 26 at 10. On January 19, 2016, the Chelan County Superior Court issued an Order of Protection restraining Y.A.F. from any contact with I.V. and prohibiting Y.A.F. from attending Orchard Middle School. ECF No.

---

[2] Ms. Olivares contacted the school counselor about the bullying, but Y.A.F. was not identified by the OMS staff. ECF No. 26 at 8. The Complaint alleges OMS knew Y.A.F. had a history of bullying others and that OMS *did not do enough* to uncover the identity of Y.A.F. as the one bullying I.V., ECF No. 26 at 4-6, ¶¶ 12-14, but, as discussed below, the state is not liable for a *failure* to act under 42 U.S.C. § 1983, so this is not relevant for this Motion.

26 at 10. On January 19, 2016, Ms. Olivares left a message for Ms. Brown relaying the substance of the Court Order. ECF No. 26 at 10. However, on January 29, 2016, Ms. Brown left a voice mail for Ms. Olivares stating that Y.A.F. could attend OMS. ECF No. 26 at 10.

On February 1, 2016, I.V. reported to his parents that Y.A.F. had been in school throughout the day. ECF No. 26 at 11. On February 2, 2016, Ms. Olivares contacted OMS and confronted Ms. Brown, indicating Y.A.F. had threatened I.V. the day before. ECF No. 26 at 11. Ms. Brown claimed to have contacted the school's attorney who told Ms. Brown Y.A.F. could attend school. ECF No. 26 at 11. As the Complaint alleges:

> What was ultimately determined is that WSD and OMS failed to distinguish between a temporary order and a permanent order, and due to their failure [Y.A.F.] could come back to OMS. . . . Ms. Olivares tried repeatedly to get Ms. Brown and Ms. Brenner to understand the distinction between the orders, but she was repeatedly ignored and the issue was not addressed.

ECF No. 1 at 11. "On February 4, 2016, Ms. Olivares contacted Mr. Helm, WSD Executive Director of Student Services, who admitted the 'school lawyer' could not locate the permanent order but only the temporary order and he blamed the attorney." ECF No. 26 at 11-12.

The Complaint is silent as to any relevant events for the remainder of that school year. The next school year – the fall of 2016 – Y.A.F. attended Westside High School, an alternative high school operated by the Wenatchee School

District, while I.V. attended Wenatchee High School. ECF No. 26 at 12. The Complaint alleges:

> On August 30, 2016, the first day of school, Y.A.F. was at the Wenatchee High School and sought and encountered I.V. Despite the restraining order he and three of his friends stood 70 feet from I.V. using threatening body language and were "sizing him up." Ms. Olivares called Ms. Brown to report the incident, who acknowledged Y.A.F. was not supposed to be on the property and he would call Officer Miller. Officer Miller called Ms. Olivares and said the next time Y.A.F. will be arrested for trespassing.

ECF No. 26 at 12-13. According to the Complaint, "[d]ue to the continued bullying and harassment, I.V. attempted, unsuccessfully, to end his life in October, 2016[,]" and that, "[d]ue to the emotional stress and flashbacks, I.V. is suffering a relapse of his anorexia and [has] recently been hospitalized again." ECF No. 26 at 13.

Plaintiffs filed suit against the Wenatchee School District and related employees, asserting a cause of action for violation of civil rights under 42 U.S.C. § 1983, alleging Plaintiff's Due Process rights to be free from the invasion of bodily integrity were infringed.[3] ECF No. 26 at 17-18, ¶¶ 21-23. The Wenatchee School District and its employees now move the Court to dismiss the § 1983 claim,

---

[3] Plaintiffs also assert a claim of negligence and a cause of action based on alleged sexual harassment. ECF No. 26 at 13-16, ¶¶16-20, 24-27.

asserting Plaintiff has failed to state a claim upon which relief may be granted. ECF No. 20. This Motion is before the Court.

## DISCUSSION

42 U.S.C. § 1983 allows private citizens to bring a claim against a state or municipality where the state or municipality deprives them of their constitutional rights. *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007) (citing *Monell v. Dep't of Soc. Serv. of the City of New York,* 436 U.S. 658, 691 (1978)). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 194 (1989). "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* at 195. The Supreme Court has held that the Clause "cannot fairly be extended to impose an

affirmative obligation on the State to ensure [the interest in life, liberty, or property] do not come to harm through other means." *Id.*

> Its purpose was to protect the people from the State, not to ensure that the State protected them from each other. The Framers were content to leave the extent of governmental obligation in the latter area to the democratic political processes.

*Id.* at 196.

In accordance with these principles, "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* (citations omitted). Because "the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* "As a general matter, then, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 196–97 (footnote omitted).

Despite this framework, the general rule of non-liability for the acts of third parties is not absolute. Two exceptions exist—the general rule does not apply (1) where the state had a "special relationship" with the plaintiff or (2) where the government actor created the danger faced by the plaintiff. *Patel*, 648 F.3d at 971.

The special relationship exception emanates from the Supreme Court decision in *DeShaney*, while the state created danger exception is a creature of the Circuit Courts. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1070 (9th Cir. 2006) (ByBee J., *dissenting*).

The crux of Defendant's Motion to Dismiss is that the Defendants, as state actors, are not liable for the acts of the student Y.A.F.—citing the general rule of non-liability while arguing the exceptions do not apply. ECF No. 20 at 2-3. Plaintiffs oppose the motion, recognizing the general rule of non-liability while arguing the two exceptions to the general rule do apply. ECF No. 24. The two exceptions are addressed in turn.

A. **Special Relationship**

The special-relationship "exception applies when a state 'takes a person into its custody and holds him there against his will.'" *Patel*, 648 F.3d at 972 (quoting *DeShaney*, 489 U.S. at 199-200). The "special-relationship exception does not apply when a state fails to protect a person who is not in custody." *Id.* (citing *DeShaney*, 489 U.S. at 195-202). "The types of custody triggering the exception are 'incarceration, institutionalization, or other similar restraint of personal liberty.'" *Id.* (quoting *DeShaney*, 489 U.S. at 200). As the Supreme Court explained in *DeShaney*:

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it

renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 200.

The Ninth Circuit has applied the rule of *DeShaney* in the context of compulsory school attendance, specifically finding "[c]ompulsory school attendance and *in loco parentis* status do not create 'custody' under the strict standard of *DeShaney*." *Patel*, 648 F.3d at 973. The Ninth Circuit clarified that, "[i]n the case of a minor child, custody does not exist until the state has so restrained the child's liberty that the parents cannot care for the child's basic needs." *Id.* at 974 (citing *DeShaney,* 489 U.S. at 199–201). The Ninth Circuit in *Patel* chose not to extend the special relationship exception to the facts of that case, reasoning that the student there did not live at school – she lived with her mother – and, although Washington law required the student to attend school *somewhere*, her mother could have removed her from the school at any time. *Id.* at 974 (citing Wash. Rev. Code § 28A.225.010(1)).

Plaintiffs concede that *Patel* clearly states compulsory school attendance does not create a special relationship between school and student. ECF No. 24 at 8. However, Plaintiffs argue that "once an Order of Protection is executed by a court of competent jurisdiction and the school is notified of the Order's existence,

ORDER GRANTING MOTION TO DISMISS 42 U.S.C. § 1983 CLAIM ~ 10

a special relationship is formed, and the school must care for the subject student at the same standard previously reserved for those in a classic custodial relationship." ECF No. 24 at 8-9. Plaintiff do not offer any citation or rationale in support of this proposition.

The Court finds there is no special relationship between Plaintiff and Defendants so as to trigger the narrow exception to non-liability. As in *Patel*, the instant action involves a Washington school, Plaintiff I.V. was not living at the school, and I.V.'s parents could have removed I.V. from the school at any time.[4]

Plaintiff points to a court order prohibiting Y.A.F. from attending OMS, but (1) Defendants were not involved with the proceedings surrounding the protection order and (2) the protection order itself did not even mention the school district.[5] There is nothing to suggest the court order restrained I.V.'s liberty, *DeShaney* 489 U.S. at 200, or that Defendants otherwise "so restrained the child's liberty that the parents [could not] care for the child's basic needs." *Patel*, 648 F.3d at 974 (citing *DeShaney,* 489 U.S. at 199–201).

---

[4]  Plaintiff's counsel conceded this point at oral argument.

[5]  During oral argument, Plaintiff's counsel conceded the protection order did not reflect that the school district had an additional legal responsibility outlined in the protection order.

ORDER GRANTING MOTION TO DISMISS 42 U.S.C. § 1983 CLAIM ~ 11

The facts and corresponding result in *Patel* further counsel against applying this exception to the instant case: (1) the student in *Patel* was developmentally disabled, (2) the school district agreed to supervise the student at all time (3) and the school district was aware of potential encounters with other students that needed to be avoided—yet the Ninth Circuit found this did not create a special relationship. *Id.* at 969-974. Accordingly, the Court finds no reason why the special relationship exception should be extended to the facts presented in this case.

B. **State Created Danger Exception**

The state created danger exception recognizes that the government may be liable where (1) there is "affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) "the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 974 (quoting *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082, 1086 (9th Cir. 2000), and *L.W. v. Grubbs,* 92 F.3d 894, 900 (9th Cir. 1996)). Plaintiffs' Complaint does not sufficiently allege the first element.

The Ninth Circuit's "'state-created danger' cases . . . contemplate § 1983 liability for the state actor who, though *not* inflicting plaintiff's injury himself, has placed plaintiff in the harmful path of a third party not liable under § 1983." *Kennedy,* 439 F.3d at 1062, n.2. This exception is not based on omissions of the

state, regardless of how egregious—the state must take some action that "'affirmatively places the plaintiff in a position of danger,' that is, where the state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Id.* at 1061 (internal brackets omitted) (quoting *DeShaney*, 489 U.S. at 197); *compare id.* at 1059-1063 (officer "affirmatively created a danger" to plaintiff by relaying allegations to mother of the accused-child molester with known, violent tendencies), *Grubbs*, 974 F.2d at 122 (medium security custodial institution "affirmatively created the dangerous situation" by assigning a known sex offender to work alone with the plaintiff-nurse), *Penilla v. City of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) ("officers' alleged conduct . . . clearly placed [the plaintiff] in a more dangerous position than the one in which they found him [by] cancelling the 911 call, removing [the plaintiff] from public view, and locking the front door, [thus making] it impossible for anyone to provide emergency medical care to [the plaintiff]"), *Munger*, 227 F.3d at 1087 (police affirmatively placed plaintiff "in a more dangerous position than the one in which they found him" after ejecting plaintiff from a bar and telling him he could not return to the bar and could not drive home—leaving him in negative 20 degree Fahrenheit weather wearing only a t-shirt and jeans), *and Wood v. Ostrander*, 879 F.2d 583, 588-590 (9th Cir. 1989) (triable issue as to whether police "affirmatively placed the plaintiff in a position of danger" where the officer "arrested the driver,

impounded the car, and left [the passenger-plaintiff] by the side of the road at night in a high-crime area"), *with Johnson*, 474 F.3d at 641 (police decision to *not* control foreseeably rowdy group of party-goers – where past years such enforcement prompted violence and destruction – did not trigger the state created danger exception).

Importantly, "'[i]n examining whether an officer affirmatively places an individual in danger, we do not look solely to the agency of the individual, nor do we rest our opinion on what options may or may not have been available to the individual. Instead, we examine whether the [state actor] left the person in a situation that was more dangerous than the one in which they found him.'" *Kennedy*, 439 F.3d 1062 (quoting *Munger,* 227 F.3d at 1086).

In the instant case, Plaintiffs only point to two arguably affirmative actions: (1) OMS telling Ms. Olivares Y.A.F. can return to OMS, despite the court order and (2) Ms. Brown's alleged representation to Ms. Olivares that she would to something about Y.A.F., but failed to do anything. ECF No. 24 at 9-10.

As to the first point, although the Complaint states Ms. Brown told Ms. Olivares that Y.A.F. could return to OMS, there is no allegation Defendants relayed this stance to Y.A.F. or his parents or that this caused Y.A.F. to return to OMS. A mere stance taken, without any allegation it caused Y.A.F. to return to

OMS (where he otherwise would not have) is not sufficient to state a claim under Section 1983.[6]

The second point begs the question of whether a mere assurance that an existing danger will be addressed is sufficient to trigger the state created danger exception. The cases of *Kennedy* and *DeShaney* demonstrate it is not.

In *Kennedy*, a thirteen year old boy allegedly molested a nine year old girl. 439 F.3d at 1057. The parents of the alleged victim of abuse reported the incident to police. *Id.* The parents told the officer of the neighbor boy's violent history and the officer assured the parents he would warn them before relaying the accusation to the boy's parent(s). *Id.* at 1057-58. The officer later did just the opposite in relaying the accusation to the boy's mother, although the officer then warned the victim's parents shortly after. *Id.* at 1058. The officer assured the parents their house would be watched by a patrol overnight, but this did not happen. *Id.* Early the next morning, the neighbor boy broke into the victim's house and shot both of the parents, killing the father and injuring the mother. *Id.* The Ninth Circuit found the defendant officer affirmatively created a danger to the Plaintiff. However, the

---

[6] This is not to say such an allegation would suffice—the Court is expressly declining to address this issue given there is no allegation of such.

Court in Kennedy clarified that, with respect to the alleged assurance that police would patrol the neighborhood:

> As in *Grubbs,* we do not rest our judgment that [the officer] affirmatively created a danger on that assurance alone, though in light of it, it is quite reasonable that the Kennedys decided late that night, when Mr. Kennedy returned from his class, to remain at home.

*Id.* (footnote omitted).

Likewise, the Supreme Court in *DeShaney* refused to open the state up to liability under the Due Process Clause even where the state "specifically proclaimed, by word and by deed, its intention to protect [the victim] against th[e] danger." 489 U.S. at 197. The Supreme Court specifically held that "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him." *Id.* at 200. The Supreme Court further stated that the State is not liable "for injuries that could have been averted had it chosen to provide [particular protective services]." *Id.* at 196-97 ("As a general matter, then, we conclude that a State's failure to protect an

individual against private violence simply does not constitute a violation of the Due Process Clause."). [7]

Ultimately, the Court cannot conclude that the mere assurance(s) left I.V. in a *more* dangerous situation, as the danger posed was not exacerbated by the alleged failure to address the issue. [8] At most, it placed I.V. in the same degree of danger. A holding otherwise would allow the state created danger exception to swallow the general rule by opening the state to liability anytime the state makes some

---

[7] Although these comments were made in the context of applying the special relationship exception, the propositions apply equally in the context of state liability in general.

[8] Plaintiffs could – but did not – argue I.V. would not have faced the *subsequent* danger of encountering Y.A.F. had the representation not been made (because I.V.'s parents would have otherwise pulled him from school). However, even if the argument were made – or the inference were to be otherwise drawn by the Court – resting liability on this act would necessarily "rest [the] opinion on what options may or may not have been available to the individual" – *i.e.*, whether I.V. would not have continued attending OMS – rather than examining "whether the [state] left [I.V.] in a situation that was more dangerous than the one in which they found him." *Kennedy*, 439 F.3d 1062 (quoting *Munger,* 227 F.3d at 1086).

assurance of a safe environment—schools and other state agencies routinely make such representations.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 20) is **GRANTED**.
2. Plaintiffs are granted leave to amend the Complaint. If so choosing, Plaintiffs shall submit an amended complaint on this issue no later than **October 30, 2017**.

The District Court Executive is directed to enter this Order, furnish copies to counsel.

**DATED** October 18, 2017.



THOMAS O. RICE
Chief United States District Judge